UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

REYDEL VAZQUEZ,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No. 2:26-cv-317-ART-EJY

**ORDER DENYING HABEAS PETITION**
**(ECF No. 11/13)**

Petitioner Reydel Vazquez is in immigration detention at the Nevada Southern Detention Center in Pahrump, Nevada.[1] Mr. Vazquez, who is Cuban, was ordered removed to Ecuador pursuant to an Asylum Cooperative Agreement ("ACA"). In his habeas petition (ECF No. 11/13), Mr. Vazquez brings two claims: first, that the ACA is unlawful as applied; and second, that because his removal order was unlawful, his continued detention resulting from the removal order is also unlawful. He requests immediate release or a fair hearing on fear-based relief, a declaration that the ACA as applied to him is unlawful, and/or an injunction against third country removal under the ACA absent a full asylum hearing. The Court now denies the petition for lack of jurisdiction.

**I.    BACKGROUND**

Normally, any noncitizen who is physically present in the United States or who arrives in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1). But a noncitizen does not have a statutory right to apply for asylum if they can be lawfully removed to a third country with which the United States has entered

---

[1] Markwayne Mullin is automatically substituted as a Respondent in place of Pamela Bondi under Fed. R. Civ. P. 25(d).

1

a bilateral agreement, also known as an Asylum Cooperative Agreement. 8 U.S.C. § 1158(a)(2)(A). Removal to a safe third country is lawful under this provision if the Attorney General determines that the noncitizens life or freedom would not be threatened in that country on the basis of a protected characteristic, and the noncitizen would have access to a "full and fair procedure" there for adjudicating an application for asylum claim or equivalent temporary protection. *Id.* Notwithstanding this procedure, the Attorney General may still grant the noncitizen asylum in the United States if he finds that it is in the public interest. *Id.*

Mr. Vazquez applied for asylum based on his fear of return to Cuba, his home country, but on DHS's motion the Immigration Judge ("IJ") pretermitted Mr. Vazquez's application. Under an ACA signed by the governments of the United States and Ecuador, the IJ ordered Mr. Vazquez removed to Ecuador without a hearing on his fear of return to either Cuba or Ecuador. Mr. Vazquez subsequently filed a habeas petition and an amended petition in this Court to challenge the Ecuador ACA and his related detention. (ECF No. 1, 11/13.) The Court heard argument on Mr. Vazquez's Amended Petition on April 30, 2026. (ECF No. 26.) Subsequently, Federal Respondents submitted a supplement stating that Mr. Vazquez had received a bond hearing before an IJ, he had been denied bond, and he had reserved his right to appeal to the Board of Immigration Appeals ("BIA") (ECF No. 27.) Mr. Vazquez responded that the bond hearing was not relevant to the merits of his petition, nor to this Court's jurisdictional analysis. (ECF No. 28.)

## II.    DISCUSSION

### 1.    District Courts Do Not Have Jurisdiction Over Claims Tied to a Removal Order

The Immigration and Nationality Act ("INA") gives the Courts of Appeals exclusive jurisdiction over any claim arising from removal proceedings. 8 U.S.C.

§§ 1252(a)(9); (b)(5). Section 1252(a)(5) prescribes that "a petition for review ... shall be the sole and exclusive means for judicial review of an order of removal ...." Under this subsection, when a claim challenges the procedure and substance of an agency determination that is "inextricably linked" to the order of removal, it cannot be heard in a district court, but is properly heard after the Petitioner appeals to the BIA, and then from the BIA directly to the circuit court. *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012). Section 1252(b)(9) mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States ... shall be available only in judicial review of a final order ...." Under this provision, petitioners who bring claims "arising from" immigration removal proceedings "cannot bypass the immigration courts and proceed directly to district court. Instead, they must exhaust the administrative process before they can access the federal courts" and bring their claim in a Petition For Review ("PFR"). *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1026 (9th Cir. 2016) (finding no jurisdiction where indigent unaccompanied minors challenged their removal orders based on violations of their purposed right to government-provided counsel in immigration proceedings). Although the "arising from" language of this subsection is not infinitely elastic, it is expansive and swallows up many claims tied to removal proceedings. *Id.* at 1031; *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 15 (1st Cir. 2007).

These jurisdiction-channeling provisions have two important built-in limits. First, district courts may hear claims that are "independent of or collateral to the removal process." *Ibarra-Perez v. United States*, 154 F.4th 989 (9th Cir. 2025). For instance, challenges to detention are independent of the removal process and may proceed in district court. *Aguilar*, 510 F.3d at 11. Plaintiffs may also come to district court to challenge removals when they are effectuated

3

without a removal order. *Ibarra-Perez*, 154 F.4th at 1000. And an ineffective assistance of counsel claim that does not seek to relitigate a removal order, but merely seeks to toll a time limit to file a PFR, also falls outside of the scope of Section 1252's jurisdiction-channeling provisions. *Singh v. Gonzales*, 499 F.3d 969, 979 (9th Cir. 2007).

Second, the purpose of these provisions is not to strip jurisdiction from the federal courts, but rather to channel claims to the Court of Appeals. *J.E.F.M.*, 837 F.3d at 1031; *Reno v. Am.–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 483, (1999). But plaintiffs seeking to take advantage of this limitation must allege something more than mere practical difficulty. *J.E.F.M.*, 837 F.3d at 1029 (requiring unaccompanied minors without counsel to exhaust the administrative process before accessing the federal courts.)

### 2.   Mr. Vazquez's Claims Are Tied to His Removal Order

Petitioner's two claims cannot be heard in a district court because they are "inextricably linked" to his order of removal, 8 U.S.C. § 1252(a)(5), and "arise[] from" the removal process. 8 U.S.C. § 1252(b)(9).

Mr. Vazquez's first claim is that the ACA process is unlawful as applied to him. He alleges that the ACA removal process violates his rights under the due process clause, the INA,  the Administrative Procedure Act ("APA"), and international law. This claim is squarely barred by these jurisdiction-channeling provisions. This amounts to a challenge to the procedure under which he was issued his ACA-derived order of removal. The Ninth Circuit has previously held that the jurisdiction-channeling provisions of Section 1252 bar due process and APA challenges with a sufficient relationship to a removal order. *J.E.F.M. v. Lynch*, 837 F.3d at 1029 n.1 (Fifth Amendment due process right to counsel); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (APA).

Mr. Vazquez's second claim is also barred. His theory is that "[b]ecause the Ecuador ACA as applied to Mr. Vazquez rendered his removal proceedings and

resulting removal order unconstitutional and arbitrary and capricious, his continued detention directly resulting from those proceedings is also unconstitutional and arbitrary and capricious." (ECF No. 13 at 14-15.) Under this theory, he can only obtain relief from detention if this Court also holds that his underlying removal order is unlawful. For jurisdictional purposes, there is little difference between his second claim and his first besides "labeling." *Aguilar* at 16. Both amount to challenges to his removal order, and both must be brought in a PFR.

At a hearing on his habeas petition, Mr. Vazquez argued that his situation is practically indistinguishable from that of the many petitioners who have successfully challenged their third country removals in district court.  In a third country removal, a noncitizen who cannot be removed to their country of origin, whether because of a grant of withholding of removal or some other reason, is removed to another country by DHS. 8 U.S.C. § 1231(b)(2)(E). Petitioners can, and frequently do, come to district court to challenge "ICE's separate and post-hearing decision to remove" the petitioner to a country that the IJ did not name on the removal order. *Ibarra-Perez*, 154 F.4th at 1000; *see, e.g. A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1134 (E.D. Cal. 2025). In these cases, petitioners do not challenge their removal orders, but to the contrary "seek to hold [DHS] to the terms of those orders." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 372 (D. Mass.) (subsequent history omitted). Here, in contrast, Petitioner received a removal order to Ecuador and is challenging that removal order. He has not attempted to enjoin an action taken by DHS in excess of what the IJ ordered.

"Jurisdictional rulings have an anodyne character that may suggest insensitivity to the plight of the parties, particularly in a case …[that] raises serious policy and moral questions." *J.E.F.M.*, 837 F.3d at 1039 (McKeown,

concurring). Due to the weight of Petitioner's allegations, two important limitations on this order should be noted.

As previously stated, Sections 1252(a)(5) and (b)(9) channel claims to the circuit court, and are not jurisdiction-stripping provisions. Petitioner has suggested that here, refusing jurisdiction in district court would in practice bar him or those in like situations from accessing federal courts altogether. There are strict limitations on the BIA appeal process and practical barriers to appeal, and at the time of the hearing no party could identify any ACA challenge that had made it to the circuit court. *See id.* at 1037 (noting that application of the jurisdiction-channeling provisions was proper because similar right to counsel claims could, and frequently did, come before the Ninth Circuit in PFRs). Despite these concerns, Petitioner has successfully overcome at least some barriers and appealed to the BIA, suggesting that in his own case the issue is one of access to justice rather than an absolute bar. *See id.* at 1029. More critically, he conceded at the hearing that his claim can in the future be brought in a PFR.

The petition also suggests another, separate issue with Mr. Vazquez's continued detention. It states that "Mr. Vazquez's detention pursuant to the Ecuador ACA is also unlawful because evidence suggests that Ecuador would not even accept Mr. Vazquez under the terms of the agreement." (ECF No. 13 at 15.) The suggestion is that whether Mr. Vazquez's removal order is lawful or unlawful, he may not be removable in practice. If this suggestion is well-founded, Petitioner may have a *Zadvydas*-type argument related to prolonged detention that could be cognizable in district court. But Petitioner has not asserted a practical inability to be removed as a ground for relief from detention. Nothing in this order addresses this possible ground or prevents the Petitioner from bringing a subsequent habeas petition on this basis.

## III.   CONCLUSION

It is hereby ordered that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 11/13) is DENIED WITHOUT PREJUDICE.

The Clerk of Court is kindly directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

DATED: June 23, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE